# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITCHELL BRUCE WEINGEL,<br><br>　　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>FRANK BISIGNANO, Commissioner of Social Security,<br><br>　　　　　　　　　　　Defendant. | Case No. 24-cv-02111-BAS-DEB<br><br>**ORDER:**<br><br>**(1) DENYING MOTION TO WAIVE OVERPAYMENT (ECF No. 14); AND**<br><br>**(2) AFFIRMING THE COMMISSIONER'S DECISION** |

Plaintiff Mitchell Bruce Weingel is self-represented.  In 2007, he started receiving disability benefits from the Social Security Administration ("SSA").  Over the next decade, Mr. Weingel made several attempts to return to work despite his disabling conditions.  He found some success working for the Department of the Navy in 2016.  Then, starting in 2017, Mr. Weingel found lasting success working for the Defense Contract Management Agency.

24cv2111

Mr. Weingel's return to work meant he was no longer eligible for disability benefits. But there was a gap between when he started working and when the SSA realized his benefits should stop.  Ultimately, the agency determined that it overpaid Mr. Weingel by $53,145.30—approximately twenty months of benefits.

Mr. Weingel asked the SSA to waive the requirement that he repay the extra benefits. Although he has enough resources to make the repayment, Mr. Weingel submitted that recovery would be against equity and good conscience.  Mr. Weingel showed that he used the extra benefits to support his elderly father, who was in a skilled nursing facility, and his two adult sons, who needed help during challenging periods of their lives.

After a hearing, an Administrative Law Judge ("ALJ") considered all the circumstances of Mr. Weingel's case and determined that the extra benefits should be repaid.  This ruling became the final decision of the Commissioner of the SSA,[1] and Mr. Weingel now appeals under 42 U.S.C. § 405(g).

The Court acknowledges that Mr. Weingel faced significant challenges while navigating the transition from receiving disability benefits to returning to the workforce.  And the record does not reflect that he squandered the overpaid benefits or exploited the disability system.  Nevertheless, substantial evidence supports the ALJ's determination that requiring repayment would not be against equity and good conscience. Mr. Weingel did not change his position for the worse or relinquish a valuable right in reliance on the benefits.  Further, evidence supports the ALJ's conclusion that repayment should not be waived under a broader concept of fairness.  Accordingly, for the following reasons, the Court **DENIES** Plaintiff's Motion to Waive Overpayment and **AFFIRMS** the Commissioner's decision.

---

[1]  In May 2025, Frank Bisignano became the Commissioner of Social Security. He is therefore substituted as Defendant in this suit for Commissioner Martin O'Malley, who occupied the position when this action commenced.  *See* Fed. R. Civ. P. 25(d); 20 C.F.R. § 422.210(d) (stating where an action for judicial review of a final decision by the Commissioner is instituted, "the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

24cv2111

## I.    BACKGROUND

### A.    Overpayment of Benefits

In 2007, Mr. Weingel began receiving disability benefits under Title II of the Social Security Act.[2] (Administrative Record ("AR") 162, ECF No. 7.)  In 2008, he attempted to return to work by testing his ability to work over the course of several months, which is known as a trial work period under the SSA's regulations.  (AR 174.)  *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1039 (9th Cir. 2007).  During this period, a claimant like Mr. Weingel is still considered disabled and receives benefits.  20 C.F.R. § 404.1592.  Further, the work performed during the trial period is not used as evidence that a disability has ended until the claimant works for at least nine months, which do not have to be consecutive.  *See id.*  Thus, "a trial work period is provided as an incentive for personal rehabilitation efforts for disabled workers."  1 Social Security Claims and Procedures § 8:27 (6th ed. 2025).

By December 2008, Mr. Weingel had completed at least nine months of trial work.  (AR 179.)  Therefore, the SSA determined that his disability had ended, but notified Mr. Weingel that he was entitled to receive benefits for December 2008, plus an additional two months, under the agency's rules.  (AR 178–80.)  *See* 20 C.F.R. § 404.1592a.

In August 2009, however, Mr. Weingel again stopped working due to his disability and requested that his benefits be reinstated.  (AR 187, 240.)  The SSA approved Mr. Weingel's request, so he again started receiving benefits from September 2009 onward under his original entitlement to benefits.  (AR 187.)  In other words, Mr. Weingel did not have to go back to square one.  He quickly started receiving benefits again under his original disability application.  (*See id.*)

---

[2] Under Title II, the Government provides disability benefits to individuals who have contributed to the Social Security program and who, because of a medically determinable physical or mental impairment, are unable to engage in substantial gainful work.  42 U.S.C. § 423(a), (d).  Title II provides benefits only while an individual's statutory disability persists.  *Id.* §§ 421(a), 423(a)(1).

24cv2111

In April 2011, the SSA requested information about Mr. Weingel's work activity. (AR 194–95.)  In May 2011, the agency notified Mr. Weingel that his benefits would continue and requested that he "promptly report any changes which may affect [his] benefits.  Failure to do so could mean [he] may have to repay any benefits not due." (AR 478.)

In October 2017, the SSA sought information about Mr. Weingel's work activity since January 2014.  (AR 205.)  A month later, Mr. Weingel submitted a Work Activity Report with the requested information, which showed earnings for several months between 2013 and 2016.  (AR 207–21; *see also* AR 471–72.)

In January 2018, the SSA notified Mr. Weingel that he may no longer be eligible for benefits based on his work activity.  (AR 226–29.)  The SSA confirmed this outcome in February 2018, stating that Mr. Weingel had been overpaid by $53,145.30 for the period from May 2016 to January 2018.  (AR 233.)

During the time when he was both working and receiving disability benefits, Mr. Weingel made payments to support his elderly father and two adult sons.  (AR 35–41.) Among these expenses were payments to an assisted care facility for his father (AR 586–88) and payments to his sons in connection with a divorce, restitution, a drug treatment program, and other expenses (AR 37–41).

In March 2018, Mr. Weingel filed a request for reconsideration, where he disputed that he was overpaid and at fault for causing the overpayment.  (AR 238–57.)  His request for reconsideration was denied.  (AR 258.)  In August 2018, Mr. Weingel requested a hearing with an ALJ.  (AR 259–66.)  The hearing was repeatedly delayed due to, among other things, scheduling conflicts, the COVID-19 pandemic, and requests from Mr. Weingel for time to seek counsel. (*See generally* AR 49–59, 60–63, 72–141, 274–77, 291–359.)  Ultimately, almost five years later, ALJ Howard Treblin held a hearing on the merits on June 26, 2023.  (AR 26.)

24cv2111

**B.      Administrative Decision**

On September 29, 2023, the ALJ issued an unfavorable decision, which concluded that Mr. Weingel is responsible for repaying $53,145.30 in overpaid benefits. (AR 18.) In reaching this outcome, the ALJ made five determinations.

First, the ALJ found that Mr. Weingel was overpaid. (AR 13–14.) The ALJ reasoned that Mr. Weingel engaged in substantial gainful activity while working for the Department of the Navy from May 2016 through December 2016, and then again while working for the Defense Contract Management Agency from October 2017 through January 2018—the end of the period at issue. (*Id.*) Mr. Weingel's work during this period "rendered him ineligible for disability benefits." (AR 14.) But because his "benefits were not stopped until February 2018, an overpayment of $53,145.30 was created during the period from May 2016 through January 2018." (*Id.*)

Second, the ALJ found that Mr. Weingel was without fault in causing the overpayment. (AR 14–15.) Although Mr. Weingel claims that he fulfilled his obligation to report his work activity to the SSA, the ALJ found this assertion is unsubstantiated. (AR 14.) Nevertheless, the ALJ acknowledged that multiple factors contributed to the overpayment, including accounting errors made by Mr. Weingel's employer in 2016. (AR 15.) Further, the ALJ addressed Mr. Weingel's belief that he was entitled to a second trial work period. (*Id.*) The ALJ explained that this belief was incorrect because Mr. Weingel's payments had been resumed in 2009 under his original entitlement to benefits. (*Id.*; *see also* AR 14.) In other words, Mr. Weingel had already exhausted the full trial work incentive for this period of disability. Even so, the ALJ gave Mr. Weingel the benefit of the doubt and found he was not at fault for the overpayment. (AR 15.)

Third, the ALJ found that recovery of the overpayment would not defeat the purposes of Title II of the Social Security Act. (AR 15.) The ALJ based this conclusion on Mr. Weingel's testimony demonstrating that he "has the means to repay the overpayment based on his steady income (working for Defense Contract Management Agency) and his assets and other material resources." (*Id.*; *see also* AR 44–45.)

Fourth, the ALJ found that recovery of the overpayment would not be against equity and good conscience. (AR 15–18.) The ALJ found that Mr. Weingel did not change his financial position for the worse because he did not incur a debt in reliance on the overpayments and then "do something he would not have done, if he had not been entitled to benefit payments." (AR 16.) The ALJ also found that Mr. Weingel did not relinquish a valuable right under the definition in 20 C.F.R. § 404.509. (*Id.*) Finally, the ALJ looked to the Ninth Circuit's guidance on this issue, which includes the general concept of fairness, and found a broader inquiry likewise supports repayment of the benefits. (AR 16–17 (citing *Quinlivan v. Sullivan*, 916 F.2d 524 (9th Cir. 1990)).)

Overall, the ALJ concluded that waiving the statutory requirement for Mr. Weingel to repay the benefits is not appropriate. (AR 18.) The Appeals Council denied Mr. Weingel's request for review, making the ALJ's ruling the final decision of the Commissioner. (AR 1–3.) Mr. Weingel now seeks judicial review, and the Court finds this matter suitable for determination on the papers submitted and without oral argument.[3] *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1).

## II. LEGAL STANDARD

"Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision." 42 U.S.C. § 405(g). The district court may affirm, modify, or reverse the decision. *Id.*

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.

---

[3] Because Mr. Weingel is proceeding pro se, the Court has held his pleadings to "less stringent standards" than those drafted by lawyers in resolving this dispute. *See, e.g.*, *Stanard v. Dy*, 88 F.4th 811, 818 n.4 (9th Cir. 2023) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

24cv2111

1997)).  The court must "consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter*, 504 F.3d at 1035 (citation modified).  "If the evidence 'is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

## III.   ANALYSIS

Mr. Weingel challenges the ALJ's finding that recovery of the overpayment would not be against equity and good conscience.  (*See generally* Mot., ECF No. 14.)  Mr. Weingel argues that because he was without fault in causing the overpayment, and because he used the overpaid benefits to pay for his father's elder care and expenses for his two adult sons, recovery would be against equity and good conscience and thus should be waived.  (*Id.* at 13–15.)

When Title II benefits are overpaid, the law requires the SSA to recover the overpayment "under regulations prescribed by the Commissioner of Social Security."  42 U.S.C. § 404.  "To recover overpayments, the Commissioner must show that the claimant actually received benefits beyond the period of disability or in excess of the correct amount."  *McCarthy v. Apfel*, 221 F.3d 1119, 1124 (9th Cir. 2000) (citing 42 U.S.C. § 404(a)).

After the SSA determines that benefits have been overpaid, the claimant may request waiver of the recovery of the overpayment.  20 C.F.R. § 404.506(b); *see also Califano v. Yamasaki*, 442 U.S. 682, 686–87 (1979) (describing the general process for obtaining review of an overpayment determination).  To obtain a waiver, two conditions must be satisfied: "(1) [the] claimant is without fault in receiving the payment, and (2) requiring repayment would either defeat the purposes of Title II or would be against equity and good conscience."  *Quinlivan*, 916 F.2d at 526 (citing 42 U.S.C. § 404(b)).

24cv2111

## A.   Overpayment

The first step in determining whether a claimant is entitled to a waiver of repayment is to confirm that an overpayment occurred.  *See McCarthy*, 221 F.3d at 1124.  The Commissioner has the burden on this point.  *Id.*

Here, as summarized above, the ALJ determined that Mr. Weingel was overpaid $53,145.30 from May 2016 through January 2018 in light of his return to work.  (AR 13–14.)  The record reflects these payments (AR 268–269), and Mr. Weingel has never taken the position that he did not receive the money.  The Court also agrees with the Commissioner that, on appeal, "Plaintiff does not challenge the ALJ's finding that he had been overpaid, and instead argues that this overpayment should be waived."  (Opp'n 3–4, ECF No. 15; *accord* Mot. 13–22.)  Indeed, "[i]n the usual overpayment case, a claimant does not contest the fact or amount of the overpayments."  *McCarthy*, 221 F.3d at 1124.  Nevertheless, the Court confirms that substantial evidence supports the ALJ's determination that Mr. Weingel was overpaid $53,145.30 in Title II benefits.

## B.   Without Fault

If the ALJ confirms that an overpayment occurred, the next step is to determine if the claimant was without fault in receiving the payment.  *See* 42 U.S.C. § 404(b); *McCarthy*, 221 F.3d at 1126.  "Fault" for this inquiry "applies only to the individual."  20 C.F.R. § 404.507 (citation omitted).  An individual is at fault for causing an overpayment if: (1) he made an incorrect statement that he knew or should have known was incorrect; (2) he failed to furnish material information to the SSA; or (3) he accepted a payment that he knew or should have known was incorrect.  *Id.*

On this point, the ALJ found in Mr. Weingel's favor.  The ALJ determined he was without fault in causing the overpayment. (AR 14–15.)  Thus, the Court considers whether repayment should be waived.

## C.   Grounds for Waiver

The last step is to determine whether requiring repayment "would either defeat the purposes of Title II or would be against equity and good conscience."  *Quinlivan*, 916 F.2d

at 526.  If either option applies, then the repayment requirement will be waived.   42 U.S.C. § 404(b); 20 C.F.R. § 404.506(a).

### 1.    Defeat the Purposes of Title II

The primary purpose of disability benefits under the Act is "to give financial assistance to disabled persons because they are without the ability to sustain themselves." *See Gamble v. Chater*, 68 F.3d 319, 322 (9th Cir. 1995).  Thus, the Commissioner's regulations provide that "recovery will defeat the purposes of Title II in . . . situations where the person from whom recovery is sought needs substantially all of his current income (including Social Security monthly benefits) to meet current ordinary and necessary living expenses."  20 C.F.R. § 404.508(b); *see also Harrison v. Heckler*, 746 F.2d 480, 483 (9th Cir. 1984) (applying a comparable test for recovering overpaid Title XVI disability benefits).  For example, where a claimant was overpaid $5,282 but had sufficient assets to make repayment, the Ninth Circuit reasoned that "the Commissioner could properly find that recovery of the overpayment will not deprive [the claimant] of the means of meeting his ordinary and necessary living expenses."  *Newton v. Chater*, 103 F.3d 139 (9th Cir. 1996) (memorandum disposition).

The ALJ concluded that requiring Mr. Weingel to repay the overpaid benefits would not defeat the purposes of Title II.  (AR 15.)  Mr. Weingel testified that if he is required to make repayment, doing so would not cause his monthly expenses to exceed his monthly income:

> ALJ:  "[M]y concern is does paying back any aspect of that overpayment put you in a financial disadvantage whereby your monthly income would then drop below your monthly expenses[?]"
>
> Mr. Weingel: "I can't honestly say that it would."

24cv2111

(AR 44.)[4]   Therefore, substantial evidence supports the ALJ's conclusion that repayment would not defeat the purposes of Title II.  *See* 20 C.F.R. § 404.508(b).

### 2.    Against Equity and Good Conscience

Mr. Weingel's core argument is that recovery of the overpayment would be against equity and good conscience.  (*See* Mot. 2.)  To demonstrate that requiring repayment would be inequitable, the claimant must show that he "changed his . . . position for the worse" or "relinquished a valuable right" because he relied upon "a notice that a payment would be made or because of the overpayment itself."  20 C.F.R. § 404.509(a)(1).  The SSA's Program Operations Manual System ("POMS") further explains: "To establish a change in position for the worse, the beneficiary would have to show that he or she did something he or she would not have done, but for the receipt of the overpaid benefits, not simply that he or she had spent the benefits payments received."  Soc. Sec. Admin., POMS, GN 02250.150 pt. (B)(2).[5]

The circumstances in which individuals change their position for the worse include moving into more expensive housing, increasing their debt, entering into a long-term contract, reducing their income by reducing work hours or stopping working entirely, and enrolling in school or training that requires payment of tuition.  Soc. Sec. Admin., POMS, GN 02250.150 pt. (E).  Examples of relinquishing a valuable right include missing an opportunity, turning down or being denied assistance, and changing employment.  *Id.* at pt. (F).  To illustrate:

- "A widow, having been awarded benefits for herself and daughter, entered her daughter in private school because the monthly benefits made this possible.  After

---

[4] The ALJ also offered Mr. Weingel the option of completing the SSA's Request for Waiver form, which would detail his monthly income, recurring expenses, and assets. (*See* AR 45.)  Mr. Weingel declined to provide this information.  (*Id.*)

[5] POMS contains agency interpretations that "are entitled to respect, but only to the extent that those interpretations have the power to persuade."  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1073 (9th Cir. 2010) (citation modified); *see also Kennedy v. Colvin*, 738 F.3d 1172, 1177 (9th Cir. 2013) (noting POMS does not impose judicially enforceable duties on courts or the ALJ).  Thus, the Court references the examples in POMS that are persuasive for interpreting 20 C.F.R. § 404.509, but those examples are not exhaustive or controlling on this Court.

24cv2111

the widow and her daughter received payments for almost a year, the deceased worker was found to be not insured and all payments to the widow and child were incorrect. The widow has no other funds with which to pay the daughter's private school expenses. Having entered the daughter in private school and thus incurred a financial obligation toward which the benefits had been applied, she was in a worse position financially than if she and her daughter had never been entitled to benefits." 20 C.F.R. § 404.509.

- "Tom purchased a more expensive home because he could afford the home based on his benefit payments. Tom relied on the increased funds to meet his financial commitment to purchase the house. He is unable to withdraw from the commitment without incurring significant financial loss." POMS, GN 02250.150 pt. (B)(2).

- "Sara declined a job because she believed the benefit payments would take care of her monetary needs." *Id.* pt. (B)(1).

In addition, the Ninth Circuit has reasoned that whether repayment is against equity and good conscience under 42 U.S.C. § 404(b) is not strictly limited to the criteria set forth in the regulations. *Quinlivan*, 916 F.2d at 527. In *Quinlivan*, the claimant was overpaid benefits while incarcerated, and he was "unaware that Congress had changed the law to prohibit payment of disability benefits to incarcerated felons." *Id.* at 525. Upon being released from custody, the claimant—who was diagnosed with schizophrenia—had "no material goods, no means of transportation, and no income." *Id.* He "spent his accumulated savings, including the overpayment, on clothes, a used truck, and daily living expenses." *Id.* He later again qualified "for disability benefits because of a personality disorder, a history of schizophrenia, blindness in one eye, and low back pain." *Id.* at 526.

The Ninth Circuit held that requiring the claimant to repay the benefits would be against equity and good conscience. *Quinlivan*, 916 F.2d at 527. The court reasoned that "Congress intended a broad concept of fairness to apply to waiver requests, one that reflects the ordinary meaning of the statutory language and takes into account the facts and

- 11 -

24cv2111

circumstances of each case." *Id.* And applying that broad fairness inquiry to the claimant's circumstances led to the conclusion that repayment "would be against equity and good conscience as that phrase is commonly understood." *Id.* at 527. However, the Ninth Circuit also "emphasize[d] that [its] interpretation of the equity and good conscience standard does not mean that whenever an individual is found to be without fault, it necessarily follows that waiver is appropriate." *Id.* Instead, "courts must apply cautiously the equity and good conscience standard to the circumstances of each case." *Id.*

In this case, the ALJ concluded: (i) Mr. Weingel did not change his position for the worse; (ii) he did not relinquish a valuable right; (iii) a broad concept of fairness does not support waiving recovery of the overpayment; and (iv) Mr. Weingel did not receive or rely on misinformation from the SSA. The Court assesses whether substantial evidence supports each determination.

### i.      Change in Position for the Worse

Mr. Weingel argues that his position changed for the worse because he took on a financial burden in reliance on the overpaid benefits. (Mot. 13–14.) He contends his decision to send money to his family is analogous to a long-term contract or commitment described by the regulations and the agency's guidance. (*Id.* at 14–15.) He points to POMS, GN 02250.150, which provides "[a]n individual may have entered into a long-term contract or commitment . . . based on the assumption of continued benefits, which could result in financial difficulty had the benefits been later reduced or stopped."

The ALJ reasoned that Mr. Weingel "did not 'change his position for the worse' because there is no showing that he reasonably relied on receiving benefit payments and then decided to do something he would not have done, if he had not been entitled to benefit payments." (AR 16.) Instead, "as the claimant testified and the record indicates, he simply would have paid his family members less if he had not been entitled to benefit payments." (*Id.*)

Substantial evidence supports the ALJ's determination. For example, with respect to Mr. Weingel's support for his elderly father, the evidence shows Mr. Weingel

- 12 -

contributed to his father's assisted living facility from 2011 to 2021—during and after the overpayment period. (AR 584–88.) After the extra benefits stopped in 2018, Mr. Weingel continued making payments to the facility. (*Id.*) Nor does the record show Mr. Weingel otherwise did something that he would not have done, but for the additional payments, to his detriment. These circumstances can be rationally interpreted to show that Mr. Weingel did not change his position for the worse in reliance on the extra benefits between 2016 and 2018. *See* 20 C.F.R. § 404.509(a)(1); *see also Ford*, 950 F.3d at 1154.

Mr. Weingel's circumstances are also dissimilar from the scenarios found in the regulations and the agency's guidance. For instance, unlike the widow who enrolled her daughter in private school "because the monthly benefits made this possible," and who had no other means to pay the tuition, Mr. Weingel has not demonstrated that there were no other funds available to pay his father's assisted living expenses during the overpayment period. *See* 20 C.F.R. § 404.509. Mr. Weingel's support of his two adult sons with payments during challenging periods of their lives likewise does not fit into the agency's guidance. Mr. Weingel did not take on a debt, like a mortgage, where he "is unable to withdraw from the commitment without incurring significant financial loss." *See* POMS, GN 02250.150 pt. (B)(2).

In short, the ALJ's conclusion that Mr. Weingel did not change his position for the worse is supported by substantial evidence. *See Hill*, 698 F.3d at 1158 (explaining that "substantial evidence" requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

### ii.     Relinquishment of a Valuable Right

Second, the ALJ concluded that Mr. Weingel did not relinquish a valuable right. (AR 16.) The record supports this conclusion. Mr. Weingel did not give up his right to employment, pass on state assistance, or miss some other opportunity because he relied on the overpaid benefits. *See* 20 C.F.R. § 404.509(a)(1); POMS, GN 02250.150 pt. (F). Instead, he chose to make payments to his family using the benefits. These circumstances do not fit within the regulations. *See* 20 C.F.R. § 404.509 (providing examples that include

- 13 -

"an individual [who] resigned from employment on the assumption he would receive regular monthly benefit payments," but because of his age, the individual was "unable to get his job back and could not get any other employment"). Thus, substantial evidence supports the ALJ's conclusion that Mr. Weingel did not relinquish a valuable right in reliance on the overpaid benefits.

### iii.    Broad Concept of Fairness

Third, the ALJ applied a broad principle of fairness to the specific facts of Mr. Weingel's case and concluded that requiring repayment would not be inequitable.  (AR 16–17.)  As in *Quinlivan*, the ALJ considered the nature of Mr. Weingel's impairment and found that the impairment did not affect Mr. Weingel's ability to understand how his return to work would affect his entitlement to disability benefits. (AR 17.)  *Cf. Higbee v. Sullivan*, 975 F.2d 558, 561–63 (9th Cir. 1992) (reasoning it would be unfair to consider a claimant's failure to cooperate with the SSA where he suffered from a severe mental illness, had been hospitalized six times, and did not understand how his disability benefits worked).

Further, the Court notes that Mr. Weingel's circumstances are starkly different from those considered in *Quinlivan*.  There, as mentioned, the claimant had been incarcerated, needed to spend the overpaid benefits for basic living expenses, and was unable to return to employment.  *See Quinlivan*, 916 F.2d at 526–27.  At the time of the ALJ's decision, the claimant's "sole source of income was $314 a month in state welfare benefits." *Id.* at 524. By contrast, as noted by the ALJ here, Mr. Weingel testified that he has the means to make the repayment.  (AR 17.)  Mr. Weingel also declined to provide a complete picture of his financial resources.  (AR 45.)  *Cf. Newton*, 103 F.3d at 139 (reasoning where claimant's assets exceeded the amount to be recovered, the Commissioner could properly find that recovery would not be against equity and good conscience).

In short, the ALJ considered the nature of Mr. Weingel's impairment and the factual circumstances of his situation.  There is enough evidence for a reasonable mind to accept that requiring Mr. Weingel to repay the benefits is appropriate under a broad concept of

- 14 -

24cv2111

fairness.  *See Quinlivan*, 916 F.2d at 527.  The ALJ's determination therefore withstands scrutiny under the substantial evidence standard.  *See Hill*, 698 F.3d at 1158.

### iv.   Reliance on Erroneous Information

Last, the Court addresses Mr. Weingel's argument that he received erroneous information from the SSA, which led to the overpayment.  (*See* Mot. 12; *see also* Reply 5.)  If an individual relies on erroneous information from the SSA in accepting the overpayment, then the regulations deem that recovery would be against equity and good conscience.  20 C.F.R. § 404.512(a).  This situation occurs when "an individual accepts such overpayment because of reliance on erroneous information from an official source within the Social Security Administration . . . with respect to the interpretation of a pertinent provision of the Social Security Act or regulations pertaining thereto."[6]  20 C.F.R. § 404.510a; *see also Anderson v. Sullivan*, 905 F.2d 1540 (9th Cir. 1990) (resolving argument based on  20 C.F.R. § 404.510a).

Given that the erroneous information must relate to an interpretation of the Social Security Act or its regulations, courts have reasoned that form letters notifying claimants of their entitlement to benefits "do not purport to make any explicit or specific interpretation" and cannot meet the standard for misinformation.  *See, e.g.*, *Valley v. Comm'r of Soc. Sec.*, 427 F.3d 388, 393 (6th Cir. 2005); *Feenster v. Colvin*, 220 F. Supp. 3d 123, 129 (D.D.C. 2016); *see also Stone v. Berryhill*, No. 17-cv-1952 (CRC), 2019 WL 1440130, at *1 (D.D.C. Apr. 1, 2019) (finding that two annual notices "informing [the claimant] of retroactive increases in her monthly benefits" do not qualify as "official interpretation[s]").  Indeed, if form letters or benefits statements "constituted official interpretation[s] of the statute or regulations sufficient to trigger the good conscience exception to repayment, virtually every Social Security benefit recipient would be entitled

---

[6]  To be precise, this regulation addresses whether a claimant is "without fault" in causing the overpayment, as opposed to whether repayment should be waived.  *See* 20 C.F.R. § 404.510a.  Here, the ALJ found Mr. Weingel was without fault, but not on this basis, so Mr. Weingel was not entitled to an automatic waiver.  (*See* AR 14–15.)  The ALJ nevertheless addressed Mr. Weingel's misinformation argument.  (*See* AR 17–18.)  The Court does the same here.

24cv2111

to waiver of repayment assuming they received benefits of any kind and a letter describing those benefits." *Valley*, 427 F.3d at 393. Thus, more is required for 20 C.F.R. § 404.512(a) to apply. *See id.*

Here, the ALJ found that Mr. Weingel did not rely on erroneous information from the SSA in accepting the overpaid benefits. (*See* AR 17–18 (applying POMS guidance based on C.F.R. § 404.510a).) Although Mr. Weingel claimed that he relied on incorrect information provided by the SSA, the ALJ noted that there are no records of who Mr. Weingel spoke to or which office advised him. (AR 17; *see also* AR 32–33; AR 263.) The ALJ further reasoned that Mr. Weingel's reliance on a "May 22, 2011, notice that his benefits would continue is also not a basis for misinformation." (AR 17.) The ALJ rationalized that Mr. Weingel had multiple work reviews that detailed the "rules and policy regarding work while collecting disability benefits." (*Id.*) Moreover, routine notices are not enough to support a claim of misinformation. (*Id.*)

The Court will not overturn the ALJ's decision. A review of the record does not reveal the ALJ committed legal error, and there is substantial evidence to support the conclusion that Mr. Weingel did not rely on erroneous information within the meaning of 20 C.F.R. § 404.510a. Hence, there is no basis to deem recovery of the overpayment as against equity or good conscience under the regulations. *See id.* § 404.512(a).

\* \* \*

Overall, substantial evidence supports the ALJ's determination that Mr. Weingel did not change his position for the worse or relinquish a valuable right, as well as the ALJ's determination that recovery of the overpayment would not violate a broad concept of fairness. There is also substantial evidence to support the conclusion that Mr. Weingel did not rely on erroneous information from the SSA. Hence, it is not appropriate to disturb the Commissioner's decision to deny the request to waive the recovery of the overpayment. *See Ford*, 950 F.3d at 1153–54.

- 16 -

24cv2111

#### D.      Remaining Challenges

Beyond the core issues resolved above, Mr. Weingel raises several additional grounds in support of his request that the Court "relinquish the obligation [that he] repay the amount of the overpayment" or determine that "a substantial reduction" is appropriate. (Mot. 21–22.)   The Court has considered these supplementary issues, but they do not change the outcome of this case for the reasons explained below.

Good Faith Negotiations.   Mr. Weingel first argues that the Commissioner refused to engage in good faith negotiations to settle this dispute.  (Mot. 21; *see also* Reply 2–4.) The Magistrate Judge's Order Setting Briefing Schedule required that the "parties must engage in good faith settlement negotiations to resolve the case."  (ECF No. 9.)  The record reflects that the parties engaged in negotiations, but the negotiations were not successful. (*See* ECF Nos. 12, 13.)  The Magistrate Judge's Order did not mandate that a settlement be reached.  *Cf. Delamater v. Anytime Fitness, Inc.*, 722 F. Supp. 2d 1168, 1180 (E.D. Cal. 2010) ("Although in a mediation, the parties may reach a settlement agreement, the parties are not required to resolve their dispute.").  Further, even though this Court has the inherent power to punish noncompliance with its orders, ruling against the Commissioner on this basis would be "so harsh a penalty [that] it should be imposed as a sanction only in extreme circumstances." *See Thompson v. Hous. Auth. of City of L.A.*, 782 F.2d 829, 831 (9th Cir. 1986).  Extreme circumstances are not present here.  Thus, this first argument is unavailing.

Bias.  Mr. Weingel next argues that the SSA and the ALJ were biased against him in various ways, which led to the unfavorable outcome.  (Mot. 21.)  When reviewing an ALJ's decision, there is "a presumption that the ALJ was unbiased." *Bayliss v. Barnhart*, 427 F.3d 1211, 1215 (9th Cir. 2005).  To rebut this presumption, the claimant must show a "conflict of interest or some other specific reason for disqualification." *Rollins v. Massanari*, 261 F.3d 853, 857–58 (9th Cir. 2001).  A claimant is "required to show that the ALJ's behavior, in the context of the whole case, was 'so extreme as to display clear inability to render fair judgment.'" *Id.* at 858 (quoting *Liteky v. United States*, 510 U.S.

540, 555–56 (1994)). The claimant bears a "heavy burden" to show bias. *Cope v. Colvin*, No. 2:15-CV-01744 JRC, 2016 WL 6439940, at *7 (W.D. Wash. Nov. 1, 2016).

Having considered Mr. Weingel's allegations, they do not overcome the presumption that the ALJ was unbiased. He fails to meet the heavy burden of showing that the ALJ's behavior displayed a conflict of interest or an inability to render fair judgment. Rather, the record shows the ALJ asked open-ended questions, permitted Mr. Weingel to submit additional evidence after the hearing, and invited Mr. Weingel to explain the issues from his point of view. (*See, e.g.*, AR 28 ("[I]n your words, what happened?"), AR 37 ("How is your receipt of the benefits, how does that lend itself to the claim of equity and good conscience relative to the two sons?"); AR 40 ("If I gave you 30 days, would that be enough to see if you could try to track that [additional information] down?").) Mr. Weingel "has pointed to nothing in the record that rises to th[e] level" of actionable bias. *See Rollins*, 261 F.3d at 858. Thus, this argument is unpersuasive.

Obfuscating Policies, Failure to Consider Evidence, and Harm to Plaintiff. Mr. Weingel's remaining arguments are best considered together. He contends the SSA's policies and procedures "obfuscated and hampered" his ability to receive a favorable outcome. (Mot. 21.) Further, Mr. Weingel claims the ALJ failed to give "adequate weight" to Mr. Weingel's evidence, and the SSA relied on "[i]ncorrect supporting information" in reaching its decision. (*Id.*) Finally, Mr. Weingel argues that requiring repayment of the overpaid benefits will cause him financial harm and potentially impact his ability to retire. (*Id.* 22.)

Mr. Weingel's contentions about difficult agency policies, the failure to consider certain evidence, and the use of incorrect supporting information are all encompassed by the substantial evidence standard described above. Under that standard, the Court cannot decide this case from scratch or substitute its judgment for that of the ALJ and the SSA. *See, e.g.*, *Hill*, 698 F.3d at 1158. Rather, the Court's review is limited to determining whether there is enough evidence to support the Commissioner's decision. *Id.* Because

24cv2111

there is substantial evidence in the record to support the Commissioner's determination that the repayment obligation should not be waived, these arguments are unavailing.

Finally, the Court recognizes that requiring Mr. Weingel to repay a considerable sum will negatively impact his financial circumstances.  However, Congress has determined that overpaid benefits should be recovered where it would not defeat the purpose of Title II or be against equity and good conscience.  42 U.S.C. § 404.  "It is Congress, not this Court, that balances those interests."  *Cf. Rotkiske v. Klemm*, 589 U.S. 8, 15 (2019).  Consequently, this final argument is not a basis for reversing the Commissioner's decision.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) ("As with other agency decisions, federal court review of social security determinations is limited.").

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Waive Overpayment (ECF No. 14) and **AFFIRMS** the Commissioner's decision.  The Clerk of Court shall enter judgment in favor of the Commissioner and close the case.

**IT IS SO ORDERED.**

DATED: **February 17, 2026**

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**

- 19 -

24cv2111